# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS AND | ) | |
| ILLINOIS DEPARTMENT OF LABOR, | ) | |
| *ex rel*. LISA MADIGAN, Attorney General | ) | |
| of the State of Illinois, | ) | No. _____ |
| | ) | |
| *Plaintiffs*, | ) | *(Electronic Filing)* |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| XING YING EMPLOYMENT AGENCY, a/k/a | ) | |
| SHUN YING EMPLOYMENT AGENCY; | ) | |
| ZHU YING, individually and in | ) | |
| her official capacity as owner; JUN JIN CHEUNG, | ) | |
| individually and in his official capacity as owner; | ) | |
| JIAO'S EMPLOYMENT AGENCY, INC; | ) | |
| GANGLIE JIAO, individually and in his official | ) | |
| capacity as owner; | ) | |
| CHINATOWN AGENCIA DE EMPLEO, a/k/a | ) | |
| CHINA EMPLOYMENT AGENCY; | ) | |
| CUI LAN ZHANG, a/k/a EVA ZHANG, | ) | |
| individually and in her official capacity as owner; | ) | |
| VICTOR TORRES, individually and in his official | ) | |
| capacity as owner; | ) | |
| NEW HIBACHI GRILL BUFFET, INC., | ) | |
| d/b/a Hibachi Grill Buffet, an Illinois corporation; | ) | |
| XI CHEN, individually and in his official capacity | ) | |
| as owner; ROYAL CICERO, INC., d/b/a Hibachi | ) | |
| Sushi Buffet, an Illinois corporation; and | ) | |
| KE JU ZHENG, individually and in his official | ) | |
| capacity as owner. | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiffs, the People of the State of Illinois and the Illinois Department of Labor (collectively,

"the State"), by and through their attorney, LISA MADIGAN, Attorney General of the State of

Illinois, complain against XING YING EMPLOYMENT AGENCY, a/k/a SHUN YING

EMPLOYMENT AGENCY; ZHU YING ZHANG, individually and in her official capacity as

an owner or officer of Xing Ying Employment Agency; JUN JIN CHEUNG, individually and in

his official capacity as an owner or officer of Xing Ying Employment Agency; JIAO'S

EMPLOYMENT AGENCY, INC.; GANGLIE JIAO, individually and in his official capacity as

owner or officer of Jiao's Employment Agency, Inc.; CHINATOWN AGENCIA DE EMPLEO,

a/k/a CHINA EMPLOYMENT AGENCY; CUI LAN ZHANG, a/k/a EVA ZHANG,

individually and in her official capacity as owner or officer of Chinatown Agencia de Empleo;

VICTOR TORRES, individually and in his official capacity as owner or officer of Chinatown

Agencia de Empleo; NEW HIBACHI GRILL BUFFET, INC. d/b/a Hibachi Grill Buffet ("Elk

Grove Village Hibachi Buffet"); XI CHEN, individually and in his official capacity as an owner

or officer of  Elk Grove Village Hibachi Buffet; ROYAL CICERO, INC. d/b/a Hibachi Sushi

Buffet ("Cicero Hibachi Buffet"); and KE JU ZHENG, individually and in his official capacity

as an owner or officer of Cicero Hibachi Buffet as follows:

### FACTUAL BACKGROUND

1.     The State brings this Complaint pursuant to the Civil Rights Act of 1866

("Section 1981"), 42 U.S.C. § 1981 *et seq.*, as amended by the Civil Rights Act of 1991; the

Illinois Human Rights Act (the "IHRA"), 775 ILCS 5/1 *et seq.*; the Minimum Wage Law (the

"MWL"), 820 ILCS 105/1 *et seq.*; and the One Day Rest in Seven Act (the "ODRISA"), 820

ILCS 140/1 *et seq.*

2.     This lawsuit arises out of abusive and discriminatory treatment of Latino workers

by a number of underground employment agencies operating out of Chicago's Chinatown

neighborhood that place vulnerable, immigrant workers in exploitative restaurant jobs across the country.

3.      These unlicensed employment agencies have targeted Latino workers and actively marketed their ability to provide such Latino (or "Mexican") workers to Chinese buffet restaurants that looked to fill low-paid kitchen positions.  Xing Ying Employment Agency, a/k/a Shun Ying Employment Agency, advertised that it could supply "a large number of Mexican workers" and "the best quality Mexican staff."  Jiao's Employment Agency, Inc., claimed to be "the base camp for Mexican workers" and committed to "provide [] competent Mexicans." Similarly, Chinatown Agencia de Empleo, a/k/a China Employment Agency, advertised that it could provide "a large number of Mexican workers" for "various jobs in restaurants."

4.      These employment agencies and their client restaurants collectively set the wage rate for each Latino worker referred, which can be as low as $3.50 an hour, well below the minimum wage in the State of Illinois of $8.25 an hour.  For every referral of a worker, these employment agencies charged commissions and fees totaling approximately $120 to $220, an amount that restaurant employers typically deducted from an employee's first wage payment and then remitted to the agencies.

5.      Once placed at the restaurants, employees worked approximately twelve to fourteen hours per day, six days per week, with no bona fide meal breaks.  They were often housed by the restaurant owners in overcrowded, squalid conditions.  For example, the employer Elk Grove Village Hibachi Buffet crowded as many as fifteen employees into a three-bedroom apartment with just one bathroom, and no furniture aside from soiled mattresses, which employees had resorted to finding themselves from a nearby garbage dumpster.  Restaurant

owners typically transported employees back and forth each day between the housing units and their restaurants.

6.      In short, these employment agencies essentially acted as central supply houses for a buffet restaurant industry seeking to profit from illegal and exploitative wages and conditions of employment.  Over a period of at least five years, since at least 2010, these employment agencies systematically selected and dispatched vulnerable Latino workers to abysmal working conditions in restaurants inside and outside Illinois.  The State now brings this action to recover lost wages for victimized employees, to recover monetary penalties for violations of state law, and to enjoin the Defendants from committing any further violations of State and federal civil rights and wage laws.

## NATURE OF THE COMPLAINT

7.      The Defendants committed acts prohibited by Section 1981, 42 U.S.C. § 1981 *et seq.*, the IHRA, 775 ILCS 5/1 *et seq.*, the MWL, 820 ILCS 105/1 *et seq.*, and the ODRISA, 820 ILCS 140/1 *et seq.*

8.      Defendants Xing Ying Employment Agency, a/k/a Shun Ying Employment Agency, Zhu Ying Zhang, Jun Jin Cheung, Jiao's Employment Agency, Inc., Ganglie Jiao, Chinatown Agencia de Empleo, a/k/a China Employment Agency, Cui Lan Zhang, and Victor Torres (collectively, the "Agency Defendants") unlawfully advertised that they could provide workers of a certain race or national origin.

9.      Agency Defendants classified, recruited, and accepted job orders and job applications on the basis of the job applicants' race or national origin in violation of Section 1981 and the IHRA.

4

10.     Defendants Elk Grove Village Hibachi Buffet and its owner Xi Chen and Cicero Hibachi Buffet and its owner Ke Ju Zheng (collectively, the "Restaurant Defendants") hired, recruited, promoted, disciplined, and based privileges and conditions of employment on the basis of an employee's or potential employee's race or national origin in violation of Section 1981 and the IHRA.

11.     The Restaurant Defendants failed to pay kitchen employees the required minimum wage of $8.25 per hour in violation of the MWL.

12.     The Restaurant Defendants failed to pay overtime wages of time and one-half for all hours worked in excess of 40 in a week in violation of the MWL.

13.     The Restaurant Defendants failed to maintain records of the hours that employees worked in violation of the ODRISA.

## THE PARTIES

14.     Plaintiffs bring this action by and through Lisa Madigan, Attorney General of the State of Illinois, as authorized pursuant to the IHRA, 775 ILCS 5/10-104(A)(1), the MWL, 820 ILCS 105/12, the ODRISA, 820 ILCS 140/6, and by her authority under the doctrine of *parens patriae*.  The interest in the well-being of Illinois residents—both physical and economic—is implicated in this case and the Attorney General therefore possesses *parens patriae* authority to commence legal actions for violations of any federal or state laws and regulations.

15.     The Attorney General brings this action to defend the State's quasi-sovereign interest in the prevention of present and future discrimination against its residents, including individuals who are, have been, or would be victims of Defendants' exploitative scheme.  The Attorney General also has an interest in ensuring that the residents of the State of Illinois are not

excluded from the benefits that flow from participation in the federal system, specifically the protections provided against discrimination under federal law.

16.    The Attorney General brings this action to safeguard the health and welfare of the State's residents and to protect future victims from Defendants' discriminatory actions. Defendants' violations affect a substantial segment of the residents of Illinois, including direct victims and the general public, who suffer the indirect effects of discrimination.  Because the interest of the State involves the prevention of future discrimination, it is not coextensive with the interest of private individuals who have been victimized and who may seek private relief. Absent action by the Attorney General, the majority of the individuals subjected to the discriminatory treatment alleged in this Complaint will be unable to vindicate their rights and collectively will suffer irreparable harm.

17.    The Attorney General enforces the public policy of the State of Illinois to secure for all of its residents the freedom from discrimination against any individual because of his or her race or national origin in connection with employment.  775 ILCS 5/1-102(A).  It is the declared interest of the State of Illinois that all people in Illinois can maintain personal dignity, realize their full productive capacities, and further their interests, rights and privileges as residents of Illinois.  775 ILCS 5/1-102(B).  The Defendants' actions constitute a direct threat to the State's public policy and its stated interest in the nondiscriminatory treatment of its citizens.

18.    Defendant Xing Ying Employment Agency, a/k/a Shun Ying Employment Agency ("Xing Ying"), is a business located at 2228 South Archer Avenue in Chicago, Illinois. Xing Ying is in the business of finding jobs and referring and placing workers into those jobs for a commission. Although Xing Ying has a City of Chicago business license, it is not licensed by

6

the Illinois Department of Labor as an employment agency as required under the Private Employment Agency Act, 225 ILCS 515, *et seq.*

19.     Zhu Ying Zhang is a resident of Illinois and lives in Chicago.  She operates and co-owns Xing Ying Employment Agency.

20.     Jun Jin Cheung is a resident of Illinois and lives in Chicago.  He is the owner of Xing Ying Employment Agency.

21.     Defendant Jiao's Employment Agency, Inc. ("Jiao's), is a business located at 2276 S. Blue Island Avenue in Chicago, Illinois.  Jiao's Employment Agency is in the business of finding jobs and referring and placing workers into those jobs for a commission.  Jiao's does not possess a City of Chicago business license and is not licensed by the Illinois Department of Labor as an employment agency as required under the Private Employment Agency Act, 225 ILCS 515, *et seq.*

22.     Ganglie Jiao is a resident of Illinois and lives in Chicago.  He operates and owns Jiao's Employment Agency, Inc.

23.     Defendant Chinatown Agencia de Empleo ("Agencia") is a business that, until approximately October 22, 2015, was located at 211 W. Alexander St. in Chicago, Illinois. Agencia is in the business of finding jobs and referring and placing workers into those jobs for commission. Agencia does have a City of Chicago business license, but it is not licensed by the Illinois Department of Labor as an employment agency as required under the Private Employment Agency Act, 225 ILCS 515, *et seq.*

24.     Cui Lan Zhang, a/k/a Eva Zhang, is a resident of Illinois and lives in Chicago. She operates and owns Agencia.  She is known to workers as Eva Zhang.

25. Victor Torres is a resident of Illinois and lives in Chicago. He also operates Agencia.

26. New Hibachi Grill Buffet, Inc., an Illinois corporation, owns and operates a Chinese buffet restaurant named Hibachi Grill Buffet located at 101 Busse Road in Elk Grove Village, Illinois 60007, in Cook County.

27. Xi Chen is a resident of Illinois. He is the owner or officer of New Hibachi Grill Buffet, Inc.

28. Royal Cicero, Inc., an Illinois corporation, owns and operates a Chinese buffet restaurant named Hibachi Sushi Buffet located at 3035 South Cicero Avenue in Cicero, Illinois 60804, in Cook County. Ke Ju Zheng is a resident of Illinois. He is an owner or officer of Royal Cicero, Inc.

## JURISDICTION AND VENUE

29. This Court has jurisdiction over the State's Section 1981 claim pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction to adjudicate state law claims under the IHRA, the MWL, and the ODRISA, pursuant to 28 U.S.C. § 1367. The events, parties, transactions, and injuries that form the basis of the federal claim are the same or related to the events, parties, transactions, and injuries that form the basis of the claims that arise under state law.

30. The Court has personal jurisdiction over the Defendants because they either reside and/or transact business inside this District.

31. Venue is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the alleged transactions or violations from which the causes of action arose happened inside this District.

## FACTUAL ALLEGATIONS

### AGENCY DEFENDANTS INTENTIONALLY AND ACTIVELY TARGETED, RECRUITED, REFERRED AND PLACED LATINO WORKERS IN EXPLOITATIVE, BELOW MINIMUM WAGE JOBS

32.     Since at least 2010, Defendant Xing Ying and Jiao's and more recently, since at least 2012, Defendant Agencia have targeted vulnerable Latino workers and placed them in restaurant jobs across the Midwest where they work long hours in pressured and sometimes abusive working conditions, are required to stay in dirty, crowded housing, and are paid well below the minimum wage.

33.     Zhu Ying Zhang and Jun Jin Cheung operate Xing Ying, and they reside at 2228 South Archer Avenue in Chicago, Illinois.  Ying Zhang ("Zhang") is known to workers as "Cindy" and Jun Jin Cheung ("Cheung") is known to workers as the "Dragon."

34.     Ganglie Jiao operates Jiao's Employment Agency, Inc. and is known to workers as Jiao.

35.     Cui Lan Zhang operates Chinatown Agencia de Empleo with Victor Torres.  Cui Lan Zhang is known to workers as Eva Zhang.

36.     Agencia and Jiao's distribute business cards in Spanish to potential workers. Jiao's business card offers in Spanish to provide jobs at Chinese restaurants that include free food and housing, and invites workers to come to the agency with their luggage.  Agencia's business card states in Spanish that Agencia is open 24 hours a day and that it can provide workers with a place to stay.

37.     Drawn by the promise of restaurant jobs that provide food and housing, Xing Ying, Jiao's and Agencia attract desperately poor Latino workers.  These workers typically have

no permanent residence, and move frequently from job to job and city to city, wherever they can find work. In most instances workers arrive at Xing Ying, Jiao's and Agencia with their backpack or luggage, in need of any job that is offered to them.

38.     Xing Ying, Jiao's, and Agencia market their placement services to restaurants by placement of newspaper advertisements. These advertisements appear in a widely circulated Chinese language newspaper, *World Journal*. On information and belief, Xing Ying, Jiao's and Agencia advertise in the *World Journal* on a monthly or semimonthly basis. In these ads, Xing Ying prominently touts to employers that it can supply them with "a large number of Mexican workers" who are "sincere" and "honest." In others, Xing Ying promises to provide "the best Mexican staff." Jiao's advertisements state that Jiao's is committed "to provide" restaurants "with competent Mexicans." It also states that Jiao's is "the base camp of Mexican workers." Similarly, in its advertisings, Agencia claims to provide "a large number of Mexican workers" for "various jobs in restaurants."

39.     Restaurant Defendants, as well as many other restaurants, learn about Agency Defendants' placement services from newspaper advertisements, as well as word-of-mouth and phone solicitations. Restaurant Defendants seek Agency Defendants' services in order to staff job positions with poor working conditions that fail to compensate workers at a minimum wage and for overtime hours.

40.     Restaurant Defendants use the workers supplied by Agency Defendants to staff kitchen positions. These positions include but are not limited to dishwasher, food cutter, or buffet stocker. On information and belief, the Restaurant Defendants specifically seek out "Mexican" or Latino workers from Agency Defendants to staff these "back of the house" positions.

### *Xing Ying*

41.     On average, it takes Defendant Xing Ying from a few hours to three days to place a worker at a restaurant. Zhang and Cheung charge workers a fee of approximately $10 a night to stay at Xing Ying while they are waiting to be placed into jobs. As many as ten workers may stay at the agency on a given night. Xing Ying is located in a two-bedroom apartment, and there are few beds. As a result, workers often have to sleep on the floor. Zhang and Cheung tell workers to stay away from the windows and to smoke or take outside breaks in the back of the building to avoid attracting attention.

42.     Zhang manages the day-to-day operations of Xing Ying. Zhang is in charge of managing recruitment efforts; interacting with workers; handling phone calls to and from restaurant employers to procure job opportunities and determine monthly wage rates; referring and placing workers in job positions; and making transportation arrangements for workers to the restaurants.

43.     Zhang uses racial slurs to refer to the workers she places. She frequently yells at them and calls them names including "lazy."

44.     Cheung lives in the agency apartment and is well-known to the workers who use his agency. Cheung enforces the unofficial agency rules by threatening and, on some occasions, beating workers or physically assaulting workers.

45.     Xing Ying negotiates with each prospective restaurant the wage rate for workers placed at the restaurant, as well as payment by the restaurant to Xing Ying of a commission and other fees. For each job referral to a restaurant, Xing Ying charges the worker a commission, which is typically between $120 and $220. Other costs, such as fees for transportation or

11

lodging, may be separately added to this commission. Restaurants deduct the total agency fee from the worker's first monthly payment to compensate Xing Ying.

46. When placing a Latino worker, Xing Ying informs the worker of the monthly wage rate and amount of hours the worker will work per day. Xing Ying and the restaurant employer jointly determine the monthly wage rate, which is invariably below minimum wage. At the time of referral, Xing Ying completes a "ticket" which states the amounts owed to Xing Ying, the wage rate, the name of the worker, and the employer's address. Xing Ying provides each Latino worker with his "ticket" and instructs him to bring the ticket to the restaurant.

***Jiao's***

47. Similar to Xing Ying, Ganglie Jiao allows workers to stay in the agency's premises while they wait to be placed for employment. On information and belief, Jiao's charges each worker a lodging fee of approximately $10 a night. Jiao's operates in a two story building. Jiao's main office is located on the first floor of the building, where workers are allowed to stay. Ganglie Jiao lives on the second floor.

48. On information and belief, Ganglie Jiao is the sole proprietor and operator of Jiao's. Ganglie Jiao is in charge of managing recruitment efforts; interacting with workers; handling phone calls to and from restaurant employers to procure job opportunities and determine monthly wage rates; referring and placing workers in job positions; and making transportation arrangements for workers to the restaurants.

49. For each job referral to a restaurant, Jiao's charges a commission, which is typically between $120 and $220. Other costs, such as fees for transportation or lodging, may be separately added to this commission. Restaurants deduct the total agency fee from the worker's first monthly payment to compensate Jiao's.

12

50.     When placing a Latino worker, Jiao's informs the worker of the monthly rate and amount of hours the worker will work per day.  On information and belief, workers are invariably paid below minimum wage for the number of hours worked per week.

51.     At the time of referral, Jiao's provides the worker with a "ticket," which states the amounts owed to Jiao's, the agreed wage rate, the name of the worker, and the employer's address.  Latino workers are instructed by Jiao's to bring the "ticket" to the restaurant.

***Agencia***

52.     Like the other Agency Defendants, Agencia allowed workers to stay in the agency's premises while they waited to be placed for employment.  On information and belief, Agencia charged each worker a lodging fee of approximately $10 for each night.  Workers stayed in the living room and in one of the bedrooms at the location and slept on the floor or on a couch.  Agencia operated from the 1st floor of 211 W. Alexander Street until the location was closed by the City of Chicago Department of Buildings on or about October 22, 2015 due to building code violations.

53.     On information and belief, Victor Torres and Cui Lan Zhang are co-owners of Agencia and jointly operate the business.  Victor Torres largely manages recruitment efforts and interacts with workers while Cui Lan Zhang handles phone calls to and from restaurant employers to procure job opportunities and determine monthly wage rates.  Both Torres and Lan Zhang refer and place workers in job positions and make transportation arrangements for workers to the restaurants.

54.     For each completed job referral to a restaurant, Agencia charges a commission, which is typically between $120 and $220.  Other costs, such as fees for transportation or

lodging, may be separately added to this commission. Restaurants deduct the total agency fee from the worker's first monthly payment to compensate Agencia.

55. When placing a Latino worker, Agencia informs the worker of the monthly rate and amount of hours the worker will work per day. On information and belief, workers are invariably paid below minimum wage for the number of hours they work per week.

56. At the time of referral, Agencia provides the worker with a "ticket," which states the amounts owed to Agencia, the agreed wage rate, the name of the worker, and the employer's address. Latino workers are instructed by Agencia to bring the "ticket" to the restaurant.

57. In this manner, Agency Defendants methodically target and select Latino workers, negotiate their discriminatory job assignments and unlawful wages and hours, and dispatch the workers to Chinese buffet restaurants throughout Illinois, all on the basis of the workers' race, ethnicity, and national origin.

58. Agency Defendants know that they are dispatching workers to work in poor working conditions for illegally low wages. Indeed, they profit from these poor working conditions; when employees inevitably leave the restaurants, they often have nowhere else to go but back to the agencies, where they again are exploited and become indebted to the agencies for an additional agency fee in order to be placed in another restaurant job.

## RESTAURANT DEFENDANTS SYSTEMATICALLY DISCRIMINATED AGAINST, EXPLOITED, AND DEGRADED LATINO EMPLOYEES BASED UPON THEIR RACE OR NATIONAL ORIGIN

59. Latino employees referred by Agency Defendants were employed by the Restaurant Defendants named in this Complaint for various periods of time since at least 2012. On information and belief, Restaurant Defendants continue to employ workers referred by Xing Ying and other agencies, including Jiao's and Agencia, to this day. Hibachi Sushi Buffet was

14

notified by the United States Department of Labor in 2013 that its wage payment practices may be in violation of federal law.

60.     During their employment, Latino employees of Restaurant Defendants have job duties that include some of the following responsibilities: washing dishes, cleaning the kitchen floor, cutting and preparing vegetables and meats, cooking meats and seafood, filling and maintaining a buffet, and performing other tasks as by supervisors at the Restaurant Defendants' restaurants.

61.     Restaurant Defendants do not hire Latino employees for head chef, chef, or tipped "front of the house" job positions.  Latino employees typically work away from the dining room area and out of view from the customers.

62.     Managers and supervisors of Restaurant Defendants harass and degrade Latino employees.  For example, managers and supervisors at Cicero Hibachi Buffet frequently yell at Latino employees and call them names like "retarded" or "stupid."  In addition, other non-Latino employees at this buffet have teased that they "hoped" some Latino employees "would die."

63.     Latino employees work in very stressful and hurried working conditions at Restaurant Defendants' restaurants, and they are constantly pressured by managers to work faster.  Latino employees are not permitted to rest or to take meal breaks longer than five to ten minutes.  In some instances, when the Defendant Restaurants are busy, workers are not permitted meal breaks at all.

64.     The pressured working conditions in the Restaurant Defendants' kitchens sometimes result in injury.  Latino workers cut their hands on kitchen knives or cutting machines, for example.  The Restaurant Defendants instruct Latino workers to work through their on-the-job injuries and fire them if they are unable to do so.

65. In contrast, Restaurant Defendants systematically provide non-Latino employees with less stressful working conditions, including allowing them longer and more frequent breaks for rests and meals. Latino employees are typically assigned less desirable, lower paid kitchen jobs such as dishwasher and food cutter. Latino and non-Latino employees' employment and wage payment records are maintained separately. On information and belief, non-Latino employees are paid higher wages when they do perform comparable work.

66. Elk Grove Village Hibachi Buffet requires Latino workers to live in rental apartments that are leased by the restaurant and located nearby. The restaurants owners or managers typically drive Latino employees between this housing and the restaurant.

67. The housing that Elk Grove Hibachi Buffet provides to Latino employees is substandard and overcrowded. Latino workers are typically housed four to five men to a room. The rooms are largely unfurnished, and there are no beds or blankets. Most Latino employees sleep on the floor or on dirty mattresses that they have retrieved from garbage dumpsters. Rooms are infested with bed bugs, rats, or other vermin.

68. Restaurant Defendants typically pay Latino employees only once per month. Thus, no matter how difficult the working and living conditions are, Latino workers are pressured to stay in these restaurant jobs for at least one month in order to collect any compensation for their work. Because the Restaurant Defendants typically deduct comission fees that workers owe to the Agency Defendants from the workers' first wage payment, workers also feel compelled to remain at their restaurant jobs for at least one month to satisfy the debts they owe to the Agency Defendants.

**RESTAURANT DEFENDANTS SYSTEMATICALLY AND WILLFULLY FAILED TO COMPENSATE LATINO EMPLOYEES AT MINIMUM WAGE RATES AND FOR OVERTIME WORK**

69.     The Restaurant Defendants regularly require Latino employees to work six days per week, starting at 10 AM to between 10 PM and 12 AM for a total of twelve to fourteen hours each workday and 72 to 84 hours per week.

70.     Latino employees are paid between $1,000 and $2,000 in cash per month, or approximately between $3.00 and $6.00 an hour, well below the minimum wage.

71.     Latino employees are not paid at time and one-half their regular hourly rate for hours worked in excess of forty per week.

72.     Restaurant Defendants deduct any fee owed to an employment agency or the cost of transportation from the employment agency to the restaurant, if applicable, from the Latino employees' first month of wages.

73.     Restaurant Defendants do not keep records of wages paid to Latino kitchen employees.

### COUNT I
#### VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866 – 42 U.S.C. § 1981 – DISCRIMINATION IN THE TERMS OF THE CONTRACTUAL EMPLOYMENT RELATIONSHIP
*(Against all Defendants)*

74.     The People of the State of Illinois re-allege and incorporate by reference the allegations in Paragraphs 1 through 73.

75.     By targeting Latino workers and referring them to abusive and discriminatory job duties and working conditions based on their race and/or national origin, Agency Defendants and the principals of those agencies deprived Latino workers of fair benefits, privileges, terms, and conditions of a contractual employment relationship in violation of 42 U.S.C. § 1981.

76.     By targeting Latino workers on the basis of their race and/or national origin in order to assign them to less desirable job duties, pay them less than minimum wage, and subject

them to abusive working conditions, Restaurant Defendants and the principals of those restaurants discriminated against Latino workers and deprived them of contractual employment opportunities that would provide fair compensation and benefits in violation of 42 U.S.C. § 1981.

77.     All Defendants engaged in unlawful intentional discrimination as prohibited by 42 U.S.C. § 1981, and therefore the People of the State of Illinois are entitled to an award of punitive damages in addition to equitable injunctive relief.

**WHEREFORE**, the People of the State of Illinois are entitled to judgment against Restaurant Defendants and Agency Defendants as follows:

A.  An order enjoining all Defendants from engaging in the civil rights violations alleged herein;

B.  An order requiring all Defendants to pay compensatory and punitive damages;

C.  An order requiring all Defendants to pay reasonable attorney's fees and costs for the prosecution and investigation of this action;

D.  An order barring Agency Defendants from obtaining a license to conduct business as an employment agency in the State of Illinois;

E.  Any other equitable relief, including permanent or preliminary injunction, temporary restraining order, or other order, as the Court deems appropriate and just.

## COUNT II
### VIOLATIONS OF THE ILLINOIS HUMAN RIGHTS ACT – DISCRIMINATORY SELECTION AND TREATMENT OF LATINO EMPLOYEES
*(Against Agency Defendants)*

78.     The People of the State of Illinois re-allege and incorporate by reference the allegations in Paragraphs 1 through 77.

79. Xing Ying, Jiao's and Agencia are each an "Employment Agency" as defined by the IHRA, 775 ILCS 5/2-101(C) in that for compensation, they regularly and at all relevant times procured opportunities to work, recruit, refer, and place workers into employment positions.

80. Agency Defendants intentionally discriminate against Latino employees by referring employees for employment and accepting applications for employment based on the race or national origin of the employees in violation of 775 ILCS 5/2-102(B).

81. Agency Defendants' business model consists of recruiting vulnerable and desperately poor Latino workers to supply employers, such as the Restaurant Defendants, with employees who would be paid well below the State's minimum wage and suffer discriminatory and abusive job assignments and working conditions without complaint.

82. Agency Defendants intentionally offer and accept requests for referral of Latino workers, negotiate the unlawful wage rates for Latino workers, and are aware of the exploitative employment conditions that Latino workers will be placed in.

83. Agency Defendants jointly determine wage rates with the restaurants where Latino workers are placed.

84. Agency Defendants' actions are in violation of the IHRA, 775 ILCS 5/2-102(B), and constitute a pattern and practice of unlawful discrimination by targeting Latino workers based on their national origin and/or race.

85. On information and belief, Agency Defendants continue to engage in this pattern and practice today.

**WHEREFORE**, the People of the State of Illinois are entitled to judgment against each Agency Defendant as follows:

19

A.  Pursuant to 775 ILCS 5/10-104(B) of the IHRA, for each act of unlawful discrimination, a civil penalty not exceeding $10,000;

B.  An order enjoining Agency Defendants from engaging in the civil rights violations alleged herein;

C.  An order requiring Agency Defendants to pay all costs for the prosecution and investigation of this action;

D.  An order barring Agency Defendants from obtaining a license to conduct business as an employment agency in the State of Illinois;

E.  Any other equitable relief, including permanent or preliminary injunction, temporary restraining order, or other order, as the Court deems appropriate and just.

COUNT III

VIOLATIONS OF THE ILLINOIS HUMAN RIGHTS ACT – DISCRIMINATION IN ADVERTISING

(*Against Agency Defendants*)

86.  The People of the State of Illinois re-allege and incorporate by reference the allegations in Paragraph 1 through 85.

87.  Xing Ying, Jiao's and Agencia each are an "Employment Agency" as defined by the IHRA, 775 ILCS 5/2-101(C), in that for compensation, they regularly and at all relevant times procured opportunities to work, recruited, referred, and placed workers into employment positions.

88.  Defendants Xing Ying, Zhang, Cheung, Jiao's, Ganglie Jiao, Agencia, Victor Torres and Cui Lan Zhang unlawfully caused to be published advertisements that directly expressed a preference or specification for persons of Latino origin in violation of 775 ILCS 5/2-102(B).

20

89. In a widely circulated newspaper, Defendants Xing Ying, Zhang, and Cheung advertised they could provide "good Mexican workers" and that they had a "large number of Mexican workers" who are "sincere" and "honest" ready to be referred and placed.

90. Similarly, in a widely circulated newspaper, Defendants Jiao's and Ganglie Jiao advertised that they could provide restaurants with "competent Mexicans" and that Jiao's is "the base camp of Mexican workers."

91. Defendants Agencia, Cui Lan Zhang and Victor Torres also advertised in a widely circulated newspaper that they could provide "a large number of Mexican workers" for "various jobs in restaurants."

92. Agency Defendants have caused these discriminatory advertisements to be published on a bi-weekly basis since as early as 2010. These advertisements continue to appear in the *World Journal* newspaper to this day.

**WHEREFORE**, the People of the State of Illinois are entitled to judgment against each Agency Defendant as follows:

A. Pursuant to 775 ILCS 5/10-104(B) of the IHRA, for each act of unlawful discrimination, a civil penalty of $10,000;

B. An order enjoining the Agency Defendants from engaging in the civil rights violations alleged herein;

C. An order requiring Agency Defendants to pay all costs for the prosecution and investigation of this action;

D. An order barring Agency Defendants from obtaining a license to conduct business as an employment agency in the State of Illinois;

E. Any other equitable relief, including permanent or preliminary injunction, temporary restraining order, or other order, as the Court deems appropriate and just.

COUNT IV
VIOLATIONS OF THE ILLINOIS HUMAN RIGHTS ACT – DISCRIMINATORY TREATMENT OF LATINO
EMPLOYEES
(*Against Restaurant Defendants*)

93. The People of the State of Illinois re-allege and incorporate by reference the allegations in Paragraphs 1 through 92.

94. Restaurant Defendants are each an  "Employer" as defined by the Illinois Human Rights Act, 775 ILCS 5/2-101(B)(a), because at all relevant times, they employed at least 15 employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation.

95. Complainants are "Employees" as defined by the Illinois Human Rights Act, 775 ILCS 5/2-101(A)(1)(a) because they performed services for remuneration within Illinois for Restaurant Defendants.

96. Restaurant Defendants intentionally discriminated against Latino employees by acting with respect to recruitment, compensation, promotion, and privileges and conditions of employment on the basis of the employees' national origin and race, in violation of 775 ILCS 5/2-102(A).

97. Restaurant Defendants specifically limited Latino employees to less desirable kitchen positions like dishwasher or food preparer, limited Latino workers to "back of the house" positions, paid Latino workers below minimum wage, and subjected Latino employees to poor working conditions and degrading treatment.

22

98.     Restaurant Defendants targeted Latino employees so that they could pay them less than minimum wage and subject them to discriminatory working conditions.  Restaurant Defendants' targeting of Latino employees consisted of the use of unregistered employment agencies like Agency Defendants that specifically advertised their ability to refer "Mexican workers" to staff low-paid kitchen or buffet stocking positions at their restaurants.

99.      Restaurant Defendants' actions subjected Latino employees to discriminatory and abusive working conditions in violation of the IHRA, 775 ILCS 5/2-102(A).  Restaurant Defendant Elk Grove Village Hibachi Buffet also subjected Latino employees to discriminatory substandard, squalid housing conditions in violation of the IHRA.

100.     Restaurant Defendants' actions constituted a pattern and practice of unlawful discrimination.  On information and belief, Restaurant Defendants continue to engage in this pattern and practice today.

**WHEREFORE**, the People of the State of Illinois are entitled to judgment against each Restaurant Defendant as follows:

A.  Pursuant to 775 ILCS 5/10-104(B) of the IHRA, for each act of unlawful discrimination, a civil penalty not exceeding $10,000;

B.  An order enjoining the Restaurant Defendants from engaging in such civil rights violations;

C.  An order requiring Restaurant Defendants to pay all costs for the prosecution and investigation of this action;

D.  Any other equitable relief, including permanent or preliminary injunction, temporary restraining order, or other order, as the Court deems appropriate and just.

23

<u>COUNT V</u>
<u>VIOLATIONS OF THE ILLINOIS HUMAN RIGHTS ACT –AIDING AND ABETTING</u>
(*Against All Defendants*)

101.    The People of the State of Illinois re-allege and incorporate by reference the allegations in Paragraphs 1 through 100.

102.    Each Defendant is a "Person" under the IHRA, 775 ILCS 5/1-103(L), which defines a "Person" as "one or more individuals, partnerships, associations or corporations."

103.    Each of the Restaurant Defendants intentionally worked with and helped the Agency Defendants to engage in unlawful discrimination against Latino workers.

104.    The Agency Defendants recruited Latino workers based on their race and national origin and advertised their ability to provide Latino workers to restaurants knowing that the Restaurant Defendants, and other similar restaurants that used their services, would pay them less than minimum wage and subject them to discriminatory working conditions and substandard housing conditions.

105.    Restaurant Defendants deducted the Agency Defendants' lodging, transportation, and referral fees from Latino employees' pay thus perpetuating the agencies' business model.  In doing so, each of the Restaurant Defendants aided and abetted the Agency Defendants, in violation of the IHRA, 775 ILCS 5/6-101(B).

106.    All Defendants' actions subjected Latino workers to discriminatory working conditions and, with the exception of Royal Cicero, Inc., substandard housing conditions.  The Defendants' actions constituted a pattern and practice of discrimination.

107.    On information and belief, all Defendants continue to engage in this pattern and practice today.

24

**WHEREFORE**, the People of the State of Illinois are entitled to judgment against Restaurant Defendants and Agency Defendants as follows:

A.  Pursuant to 775 ILCS 5/10-104(B) of the IHRA, for each act of unlawful discrimination, a civil penalty not exceeding $10,000;

B.  An order enjoining all Defendants from engaging in such civil rights violations;

C.  An order requiring Agency Defendants to pay all costs for the prosecution and investigation of this action;

D.  Any other equitable relief, including permanent or preliminary injunction, temporary restraining order, or other order, as the Court deems appropriate and just.

<u>COUNT VI</u>
<u>VIOLATIONS OF THE MINIMUM WAGE LAW- NON-PAYMENT OF MINIMUM WAGE AND OVERTIME</u>
(*Against Restaurant Defendant Hibachi Grill Buffet, Inc., d/b/a Hibachi Grill Buffet, "Elk Grove Village Hibachi Buffet" and Defendant Xi Chen, individually and in his official capacity*)

108.    Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 107.

109.    Restaurant Defendant Elk Grove Hibachi Buffet is an employer as "Employer" is defined in the MWL, 820 ILCS 105/3(c).

110.    Defendant Xi Chen, an individual, is an officer of Hibachi Grill Buffet, Inc. d/b/a Hibachi Grill and Supreme Buffet.

111.    Pursuant to the MWL, an employer is also "any individual… or any person or group of persons acting directly or indirectly in the interest of any employer in relation to an employee...."   820 ILCS 105/3(c).

25

112.    Elk Grove Hibachi Buffet and Xi Chen are employers legally responsible for payment of all wages at a minimum rate and a rate of time and a half to all non-exempt employees who worked in excess of forty hours per week.  820 ILCS 105/4(a).

113.    At all relevant times, Cutberto Jimenez, Roman Mejia, Victor De Dios Martinez, Rafael Cervantes, Chun Ping Chen, Kong Shi Wang, Zhong Chen, Yong Chen, Kai Qing Weng, and Chi Xin Wang, were employed by Elk Grove Hibachi Buffet and were employees as defined by the MWL, 820 ILCS 105/3(d).

114.    Pursuant to statutory authority, the Illinois Department of Labor (IDOL) is empowered to investigate alleged violations, institute actions for penalties, and enforce the provision of the MWL on behalf of any individual who has a right of action under the MWL. 820 ILCS 105/11(d), 12(b).

115.    Pursuant to statutory authority and relative to the aforementioned employment, IDOL investigated Elk Grove Hibachi Buffet for alleged violations of the MWL, 820 ILCS 105/1 *et seq.*

116.    As a result of the investigation, IDOL found that Elk Grove Hibachi Buffet had a duty to pay outstanding minimum wages and failed to pay minimum wages and overtime for hours worked over 40 in a week.

117.    IDOL found that Claimant Cutberto Jimenez had worked in excess of 40 hours per week during the pay periods between September 8, 2012 and August 24, 2013, but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit A, IDOL Audit).

118.    IDOL found that Claimant Rolman Mejia had worked in excess of 40 hours per week during the pay periods between January 12, 2013 and August 24, 2013 but was not paid

minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit A, IDOL Audit).

119.    IDOL found that Claimant Rafael Cervantes had worked in excess of 40 hours per week during the pay periods between June 8, 2013 and August 24, 2013 but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit A, IDOL Audit).

120.    IDOL found that Claimants Chun Ping Chen, Kong Shi Wang, Zhong Chen, Yong Chen, Kai Qing Weng, and Chi Xin Wang, received tips but were not paid sufficient minimum wage during certain pay periods between 2012 and 2014. (See Exhibit A, IDOL Audit).

121.    The MWL provides in part that an employer who fails to pay minimum wage and/or overtime shall be liable for "the amount of the unpaid minimum wages and unpaid overtime compensation and an equal additional amount as punitive damages and …costs." 820 ILCS 105/12(b).

122.    IDOL found that Defendants Elk Grove Hibachi Buffet and Xi Chen underpaid the above-named Claimants a total of $42,023.20.  Despite IDOL's repeated demands for payment, the wages remain outstanding.

**WHEREFORE**, Plaintiffs are entitled to judgment against Elk Grove Village Hibachi Buffet and Xi Chen as follows:

A.  A judgment in the amount of $42,023.20 as compensatory damages for back wages due to employees under the MWL;

B. A judgment in the amount of 2% of the unpaid wages owed for each month during which the underpayments remained unpaid, as provided for by the MWL, 820 ILCS 105/12;

C. A penalty of 20% of the unpaid wage amount, as provided for by the MWL, 820 ILCS 105/12;

D. An order requiring Elk Grove Village Hibachi Buffet and Xi Chen to pay all costs for the prosecution and investigation of this action;

E. That the Court enjoin Elk Grove Village Hibachi Buffet and Xi Chen from violating the MWL;

F. Such other and further relief as this Court deems appropriate and just.

COUNT VII

VIOLATIONS OF THE ILLINOIS ONE DAY REST IN SEVEN ACT

(*Against Restaurant Defendant Hibachi Grill Buffet, Inc. d/b/a Hibachi Grill Buffet*)

(*"Elk Grove Village Hibachi Buffet"*)

123. Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs through 122.

124. Restaurant Defendant Elk Grove Village Hibachi Buffet is an employer as "Employer" is defined in the ODRISA, 820 ILCS 140/1.

125. Elk Grove Village Hibachi Buffet is an employer legally responsible for keeping a time book showing the names and addresses of all employees and the hours worked by each of them on each day. 820 ILCS 140/5.

126. Elk Grove Village Hibachi Buffet failed to keep such records as required under ODRISA.

**WHEREFORE**, Plaintiffs are entitled to judgment against Elk Grove Village Hibachi Buffet as follows:

    A.  A judgment in the amount of $4,500 for failure to keep records as provided in the ODRISA;

    B.  That the Court declare that Elk Grove Village Hibachi Buffet violated the ODRISA;

    C.  That the Court enjoin Elk Grove Village Hibachi Buffet from violating the ODRISA;

    D.  Such other and further relief as this Court deems appropriate and just.

COUNT IX

VIOLATIONS OF THE MINIMUM WAGE LAW - NON-PAYMENT OF MINIMUM WAGE AND OVERTIME
*(Against Restaurant Defendant Royal Cicero, Inc., d/b/a Hibachi Sushi Buffet, "Cicero Hibachi Buffet" and Defendant Ke Ju Zheng, individually and in his official capacity)*

127.    Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 126.

128.    Restaurant Defendant Cicero Hibachi Buffet is an employer as "Employer" is defined in the MWL, 820 ILCS 105/3(c).

129.    Defendant Ke Ju Zheng, an individual, is an officer of Hibachi Grill Buffet, Inc. d/b/a Hibachi Grill and Supreme Buffet.

130.    Pursuant to the MWL, an employer is also "any individual… or any person or group of persons acting directly or indirectly in the interest of any employer in relation to an employee...."   820 ILCS 105/3(c).

131.    Cicero Hibachi Buffet and Ke Ju Zheng are employers legally responsible for payment of all wages at a minimum rate and a rate of time and a half to all non-exempt employees who worked in excess of forty hours per week.  820 ILCS 105/4, 4(a).

29

132.     At all relevant times, Alberto Galicia, Reymundo Jimenez, Valente Costilla, Jose Arguello, Jesus Valentin, Bernardo Reyes, and Ricardo Chontal were employed by Cicero Hibachi Buffet and were employees as defined by the MWL, 820 ILCS 105/3(d).

133.     Pursuant to statutory authority, IDOL is empowered to investigate alleged violations, institute actions for penalties, and enforce the provision of the MWL on behalf of any individual who has a right of action under the MWL. 820 ILCS 105/11(d), 12(b).

134.     Pursuant to statutory authority and relative to the aforementioned employment, IDOL investigated Cicero Hibachi Buffet for alleged violations of the MWL, 820 ILCS 105/1 *et seq.*

135.     As a result of the investigation, IDOL found that Cicero Hibachi Buffet had a duty to pay outstanding minimum wages, and failed to pay minimum wages and overtime for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

136.     IDOL found that Claimant Reymundo Jimenez had worked in excess of 40 hours per week during the pay periods between January 5, 2013 and August 17, 2013, but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

137.     IDOL found that Claimant Alberto Galicia had worked in excess of 40 hours per week during the pay periods between February 2, 2013 and July 27, 2013 but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

138.     IDOL found that Claimant Valente Costilla had worked in excess of 40 hours per week during the pay periods between January 5, 2013 and August 31, 2013 but was not paid

30

minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

139.    IDOL found that Claimant Jose Arguello had worked in excess of 40 hours per week during the pay periods between January 5, 2013 and September 21, 2013 but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

140.    IDOL found that Claimant Jesus Valentin had worked in excess of 40 hours per week during the pay periods between February 9, 2013 and June 14, 2014 but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

141.    IDOL found that Claimant Bernardo Reyes had worked in excess of 40 hours per week during the pay periods between June 8, 2013 and May 31, 2014, but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

142.    IDOL found that Claimant Ricardo Chontal had worked in excess of 40 hours per week during the pay periods between April 19, 2014 and May 24, 2014, but was not paid minimum wage or time and one-half his regular rate for hours worked over 40 in a week. (See Exhibit B, IDOL audit).

143.    The MWL provides in part that an employer who fails to pay minimum wage and/or overtime shall be liable for "the amount of the unpaid minimum wages and unpaid overtime compensation and an equal additional amount as punitive damages and …costs." 820 ILCS 105/12(b).

144.    IDOL found that Defendant Royal Cicero, Inc. and Ke Ju Zheng underpaid the above-named Claimants a total of $76, 126.88.  Despite IDOL's repeated demands for payment, the wages remain outstanding.

**WHEREFORE**, Plaintiffs are entitled to judgment against Royal Cicero, Inc. and Ke Ju Zheng as follows:

A.  A judgment in the amount of $76,126.88 for back wages due to employees as provided by the MWL;

B.  A judgment in the amount of 2% of the unpaid wages owed for each month during which the underpayments remained unpaid, as provided for by the MWL, 820 ILCS 105/12;

C.   A penalty of 20% of the unpaid wage amount, as provided for by the MWL, 820 ILCS 105/12;

D.  An order requiring Cicero Hibachi Buffet and Ke Ju Zheng to pay all costs for the prosecution and investigation of this action;

E.  That the Court enjoin Cicero Hibachi Buffet and Ke Ju Zheng from violating the MWL;

F.  Such other and further relief as this Court deems appropriate and just.

## COUNT X
### VIOLATIONS OF THE ILLINOIS ONE DAY REST IN SEVEN ACT
(*Against Restaurant Defendant Royal Cicero, Inc. d/b/a Hibachi Sushi Buffet*)
(*"Cicero Hibachi Buffet"*)

145.    Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 144.

32

146.    Restaurant Cicero Hibachi Buffet is an employer as "Employer" is defined in the ODRISA, 820 ILCS 140/1.

147.    Cicero Hibachi Buffet is an employer legally responsible for keeping a time book showing the names and addresses of all employees and the hours worked by each of them on each day.  820 ILCS 140/5.

148.    Cicero Hibachi Buffet failed to keep such records as required under ODRISA.

**WHEREFORE**, Plaintiffs entitled to judgment against Cicero Hibachi Buffet as follows:

A.  A judgment in the amount of $3,5000 for failure to keep records as provided in the ODRISA;

B.  That the Court declare that Cicero Hibachi Buffet violated the ODRISA;

C.  That the Court enjoin Cicero Hibachi Buffet from violating the ODRISA;

D.  Such other and further relief as this Court deems appropriate and just.

Dated: November 12, 2015                          Respectfully Submitted,

LISA MADIGAN
Attorney General of the State of Illinois

BY:   s/ Karyn L. Bass Ehler
Cara A. Hendrickson
Karyn L. Bass Ehler
Jane R. Flanagan
Manuela Hernandez
Christopher J. Kim
Assistant Attorneys General
100 West Randolph Street, 11th Floor
Chicago, Illinois 60601
Phone: (312) 814-3000
Attorney No. 99000