IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS AND ILLINOIS DEPARTMENT OF LABOR, *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 15 C 10235 |
| v. | ) ) | Judge John Z. Lee |
| XING YING EMPLOYMENT AGENCY, a/k/a SHUN YING EMPLOYMENT AGENCY; ZHU YING ZHANG, individually and in her official capacity as owner; JUN JIN CHEUNG, individually and in his official capacity as owner, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The People of the State of Illinois, the Illinois Department of Labor, and Lisa Madigan (collectively, "Plaintiffs") brought suit against several employment agencies and their client restaurants, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and other federal and state civil rights and employment laws. Plaintiffs allege that the agencies and restaurants engaged in discriminatory and abusive treatment of Hispanic employees. Most defendants have settled, but Defendant Xing Ying Employment Agency ("Xing Ying") and its owners, Zhu Ying Zhang ("Zhang") and Jun Jin Cheung ("Cheung") (collectively, "Defendants") remain.

Plaintiffs have now moved for partial summary judgment against Defendants on their Title VII claim for discrimination in advertising. For the reasons that follow, Plaintiffs' motion is granted as to Xing Ying and denied as to Zhang and Cheung.

### **Background**[1]

Xing Ying is an unlicensed employment agency located in Chicago. Pls.' LR 56.1(a)(3) Stmt. ¶¶ 5, 7, ECF No. 109. Xing Ying finds jobs and refers and places workers into those jobs for a commission. *Id.* ¶ 6. The agency is co-owned by Zhang and Cheung and operated by Zhang. *Id.* ¶¶ 8–13.

*World Journal* is a widely circulated daily Chinese-language newspaper. *Id.* ¶¶ 17, 18. Its Chicago edition is distributed in downtown Chicago and the surrounding suburban areas. *Id.* ¶ 19. *World Journal* sells advertising placements, with the advertising customer determining the content of the advertisement, as well as the frequency of the advertisement's publication. *Id.* ¶¶ 22–24. Xing Ying placed daily advertisements in the *World Journal* almost continually from April 12, 2011 until October 31, 2015. *Id.* ¶¶ 25–27. From April 12, 2011 through July 17, 2012, Xing Ying's advertisements included the following language:[2]

---

[1] The following facts are undisputed. Defendants did not respond to Plaintiffs' statement of facts as required by Local Rule 56.1. All of Plaintiffs' facts are thus deemed admitted for the purposes of this motion. *See* 56.1(b)(3)(C); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

[2] The language has been translated from Chinese. *See* Pls.' LR 56.1(a)(3) Stmt. ¶ 29; *id.* Ex. I, Declaration of Meihua You ¶¶ 1–11, 14–16, 18; *id.,* Ex. I, Exs. 1–47, Xing Ying Employment Agency and Jiao's Employment Agency Ad Translations.

2

> Chicago Xingying Employment Agency
> Please contact Ms. Zhang
> Tel: 312-791-1558
> 312-791-1503
> Cell: 312-927-9958
> Lots of Mexicans
> Honest and sincere (provide the best Mexicans)
> Sushi and teppanyaki
> Station pickup service
> Open 7 days, 24 hour service
> Add.: 2228 S. Archer Ave., Chicago, IL 60616

*Id.* ¶ 29. The advertisements from July 18, 2012 through October 31, 2015 were substantively identical to the above advertisement, except that they also advertised "All trades and professions," after the words "Sushi and teppanyaki." *Id.* ¶ 30.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court

must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

Plaintiffs have moved for partial summary judgment on Count II of their Amended Complaint, which alleges that Defendants violated Title VII by engaging in discriminatory advertising. Pls.' Mem. Supp. Mot. Summ. J. at 1, ECF No. 108. Specifically, Plaintiffs claim that Defendants' advertisements unlawfully expressed a preference or specification for "Mexicans" or persons of Latino origin in violation of 42 U.S.C. § 2000e-3(b). Am. Compl. ¶¶ 85, 86.

### I. Background on § 2000e-3(b)

42 U.S.C. § 2000e-3(b) prohibits employment agencies from causing to be printed or published "any notice or advertisement . . . relating to any classification or referral for employment by such an employment agency . . . indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment."

Congress passed Title VII "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)). The statute is

4

notable for being "precise, complex, and exhaustive," a characteristic that "makes it incorrect to infer that Congress meant anything other than what the text does say." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2530 (2013).

There is notably little case law on 42 U.S.C. § 2000e-3(b). The Court was only able to find two cases, in federal, state, or administrative courts, that dealt with § 2000e-3(b) as it applies to an employment agency. Neither case engaged in statutory interpretation of the provision. *See Equal Employment Opportunity Comm'n*, EEOC Dec. No. 72-157 (1971) (finding reasonable cause to believe that an employment agency violated Title VII by indicating sex preferences in advertising, when it advertised for positions under the heading "Men's Employment Agencies"); *Morrow v. Mississippi Publishers Corp.*, No. 72J-17(R), 1972 WL 236, at *2 (S.D. Miss. Nov. 27, 1972) (holding that newspaper publishers publishing discriminatory advertisements do not qualify as "employment agencies" under the provision). The remaining, albeit extremely limited, case law relates to employers.[3] *See, e.g., Hailes v. United Air Lines*, 464 F.2d 1006, 1008 (5th Cir. 1972) (holding that a male plaintiff could state a justiciable § 2000e-3(b) claim against an employer that advertised for stewardesses under a "female only" column).

---

[3] The language in the provision relating to employers is slightly different than that relating to employment agencies. While employment agencies are banned from publishing discriminatory notices or advertisements "relating to any classification or referral for employment by such an employment agency," employers are banned from publishing such notices or advertisements "relating to employment by such an employer." § 2000e-3(b).

## II. Whether Xing Ying Violated § 2000e-3(b)

Plaintiffs contend that Defendants' advertisement violates the plain language of § 2000e-3(b). The parties do not dispute that Xing Ying caused the advertisements at question to be published and that the advertisements "relate[ ] to . . . [a] referral for employment by such an employment agency." § 2000e-3(b); Pls.' LR 56.1(a)(3) Stmt. ¶¶ 6, 7, 25–27, 29, 30. The parties disagree, however, on whether the advertisements "indicat[e] any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin." § 2000e-3(b).

"Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (citations and quotation marks omitted).

According to Plaintiffs, Xing Ying's advertisement indicated a "specification" based on race or national origin when it promoted the availability for Mexicans for hire. Pls.' Mem. Supp. Mot. Summ. J. at 4–5. While the statute does not define "specification," Plaintiffs contend that the ordinary meaning of the term is "the act of identifying something precisely." *Id.* at 5 (citing *Oxford English Dictionary,* https://en.oxforddictionaries.com/definition/specification). By identifying its available workers as Mexican, Plaintiffs argue, Xing Ying's advertisement indicated a prohibited specification on the basis of race or national origin. *Id.*

Defendants do not directly respond to these arguments. Instead, Defendants argue that the provision "should not be construed as a sweeping declaration that outlaws any mention of race," because "[m]ention of race is discriminatory only where there are people who are discriminated against and whose interest is adversely affected by the mention of race." Defs.' Mem. Opp. Mot. Summ. J. at 3, ECF No. 112-1. Defendants further assert that identifying available workers as "Mexican" does not indicate a prohibited specification for workers, because "the advertisement is clearly targeted towards potential employers and not workers." *Id.*

These arguments ignore the language of the statute. The provision prohibits any referral for employment indicating any "preference, limitation, specification, or discrimination" based on the race or national origin. If Congress intended to outlaw only mention of race that was plainly "discriminatory," it could have merely prohibited "discrimination" based on race or national origin. Instead, Congress prohibited any "preference, limitation, specification, or discrimination" based on race or national origin. As such, the Court assumes that "specification" was not intended to be rendered superfluous by the inclusion of "discrimination." *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation and internal quotation marks omitted)). As for Defendants' other argument, the language of the provision indicates no limitation on the

7

audience for the advertisement. Rather, it broadly bans advertisements "relating to any classification or referral for employment" that classify by race or national origin. § 2000e-3(b).

The Court concludes that, in prohibiting employment agencies from publishing advertisements indicating any "specification" based on national origin, Congress forbade employment agencies from advertising the availability of workers based upon their national origin.[4] The language is unambiguous, and there is no dispute that Xing Ying advertised the availability of Mexican workers. Plaintiffs have therefore demonstrated that they are entitled to summary judgment on the question of whether Xing Ying's advertisements violated 42 U.S.C. § 2000e-3(b).[5]

### III. Zhang and Cheung's Liability

While Plaintiffs moved for summary judgment against all three Defendants, Plaintiffs have failed to address the question of Zhang and Cheung's individual liability. Under Title VII, an employment agency is defined as "any person regularly undertaking with or without compensation to procure employees for an

---

[4] Additionally, although Plaintiffs do not press the point, describing the national origin of the workers could constitute an impermissible "limitation" of the available workers under 42 U.S.C. § 2000e-3(b). And, if Xing Ying only placed workers who were "Mexican" or intended to appeal to those employers who preferred to hire "Mexican" workers, the advertisement could indicate an impermissible "preference" for Mexican workers, whether from the perspective of Xing Ying or its prospective client-employers.

[5] The statute allows for one exception: it permits advertisements indicating a specification based on national origin when "national origin is a bona fide occupational qualification for employment." § 2003-e(b). The Court finds that the exception does not apply. First, there are certainly no facts in the record from which a jury could conclude that an advertisement for Mexican national origin is an occupational qualification for workers of "all trades and professions." Moreover, Defendants make no argument that the advertisement fits in this exception, and as such they have waived the argument. *Godbole v. Ries*, 2017 WL 219506, at *2 (N.D. Ill. Jan. 19, 2017) ("The Court is not required to construct arguments for [parties]." (citing *Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado,* 771 F.3d 980, 987 (7th Cir. 2014))).

8

employer or to procure for employees opportunities to work for an employer and includes an agent of such person," § 2000(e)(c), with "person" including both individuals and legal entities, § 2000(e)(a). Given the undisputed facts, Xing Ying qualifies as an employment agency under the statute, as it regularly finds jobs and then refers and places workers into those jobs for a commission. Pls.' LR 56.1(a)(3) Stmt. ¶¶ 5–7. But Plaintiffs have not argued that Cheung and Zhang, in their personal capacities, so qualify, and that, furthermore, they personally caused the advertisements to be published. Nor do the undisputed facts clarify which individual placed the advertisements, or whether there were other people working for Xing Ying. Moreover, while Plaintiffs summarily contend that the Defendants, generally, have violated the statute, *see* Pls.' Mem. Supp. Mot. Summ. J. at 1, 3, 9, Plaintiffs have failed to make any argument about Zhang and Cheung's personal violation of the statute. They have accordingly waived that argument. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman–Spencer Agency, Inc.,* 845 F.3d 313, 321 (7th Cir. 2017 ("[P]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority").

In sum, Plaintiffs have demonstrated that they are entitled to summary judgment on their claim that Xing Ying violated Title VII by engaging in discriminatory advertising, in violation of 42 U.S.C. § 2000e-3(b). Plaintiffs have not satisfied their burden to do so as to Zhang and Cheung in their personal capacities, and Plaintiffs' motion for summary judgment as to Zhang and Cheung is denied.

### III. Relief

Plaintiffs request that the Court "permanently enjoin Defendants" from violating the statute. *See* Pls.' Mem. Supp. Mot. Dismiss at 3, 9. Plaintiffs' briefs, however, do not discuss the requirements under Fed. R. Civ. P. 65 for granting such relief. Plaintiffs therefore have not met their burden for seeking injunctive relief. Accordingly, to the extent that Plaintiffs request injunctive relief, the Court denies it without prejudice.

### Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion for partial summary judgment [106] as to Xing Ying and denies it as to Zhang and Cheung. The Court sets a status hearing for 4/5/18 at 9:00 a.m. to discuss the scope of any injunctive relief as to Xing Ying.

**IT IS SO ORDERED.**          **ENTERED**    3/20/18

_____
**John Z. Lee**
**United States District Judge**